Case number 10-1557 William Wiesberger v. Suzanne Wiesberger Gentlemen Counsel step up Mr. Schroeder, you have 15 minutes. You can parcel it out any way you like. I assume you're going to save out a few minutes for a rebuttal. Yes, 10 and 5 please. Okay. In our judgment, this is a rather straightforward case. The circuit court entered summary judgment against William on a conversion claim regarding his removal of funds from a bank account that was held in the name of the Leah Wiesberger Living Trust. The pleadings that Leah filed themselves admitted that William was named as a co-trustee of this account. That's on page 436 of the record. That is the amended verified complaint that the plaintiff filed. Well, let's stop at that point. He was a co-trustee on the bank account, not on the trust. True, Your Honor, but the significance of his being a co-trustee on the bank account lies in the fact that that gave him the right to withdraw funds. Where does it say that? What case can you show me that says such a thing? His name's on the account. It gives him the right. His name's on the account. He's a signature on the account. That's all it is. That doesn't make him a trustee by law unless you have some case that I'm not familiar with. Well, I'm not saying it made him a trustee of the trust, but the fact his name was listed on the account gave him the right to withdraw money from the account. In other words, if I went to my neighbor's bank and said, I want my neighbor's money, the bank would say, no, you have no right to do that. His name was listed on this account. That gave him the right to make deposits. So he could do whatever he wants with the money. That's not what I'm saying. No, I'm not saying that. But when you take the fact that his name was on the account coupled with his deposition testimony that this account was initially his and did in fact contain his own money, the point is that's what he said. He said the account was initially held in his name and there was money in his account, and when the account became titled in the name of the living trust, his money stayed there. So when he withdrew these funds at issue, he testified that I was withdrawing my own money. Do you have any case that would support your position that once you set up a trust, it doesn't mean anything as long as you're a signature on some bank account? Do you have some kind of case anywhere in America? To say that, no. But I'm suggesting, just suggesting, stating his name was on the account. I'm distinguishing between whether he was a trustee of the trust versus his right to access the account. And when you, at our contention, our argument is he had the right to access the account, and it could be said that the funds he withdrew, he didn't use them properly. But in this case, based upon his deposition testimony that the money was his that he withdrew, there was no damage to the trust, no harm to the trust. The SEDACA case that the plaintiff cites in her own brief says that. When the trustee, if trust funds are commingled and the trustee withdraws funds, there's a conclusive presumption that the trustee withdrew his own funds for his own use. That's what we have here based upon William's deposition testimony, which on summary judgment has to be considered true. If he had not testified that he didn't have any money, if he just said, I felt like it or something, but that's not what we have here. So I submit to you that those two facts combined together support what he did and made it erroneous for the court on summary judgment, I'm not talking about a trial, on summary judgment to rule against him because the court essentially disbelieved his testimony. And on summary judgment that cannot be done. I thought the court found that he had a claim against Leah for other things, that he may have had a claim that she owed him money, but the funds that were put in there were hers. That is something the circuit court stated, but under noble review, I would submit that the circuit court was in error because, again, William Weisberger testified in his deposition that it was his money and he had the right to take it out because his name was on the account. Well, I thought this was titled the Leah Berleah Weisberger Trust. I think it was the Living Trust, but the distinction doesn't matter. Is that what it was titled? That is what it was titled, yes. Didn't she say she put the money in that trust? She did say that. And you're saying because it was deposited in Harris Bank and his name was on that account, that he had a right to monies that she put into her own trust? I'm saying that because his name was on the account, he had the right to withdraw what he says were his own funds from that account. Did he have any right to remove money from a trust, a Living Trust, that she had the sole control over? If it was his funds he was withdrawing, yes. Did he have any right to ignore the circuit court's judgment? This is an appeal from an order of contempt, isn't it? Well, that's an interesting issue, your Honor. The contempt is rather unique in this case. Well, it's unique except that's the thing you're appealing. We're appealing, well, the contempt folds back into, you know, as… No, it doesn't. No, it doesn't. You are here to try to expunge a contempt order, okay? But the contempt was the entry of a judgment, which was simply the granting or essentially the entry of a 304… Yes, but that was a judgment entered against your client, which you haven't appealed. I haven't. We haven't appealed it. No, the notice of appeal references both the contempt and the summary judgment ruling, both of them. That's what we said in the reply, and that's what the notice of appeal states. You argue in your reply brief that this really isn't a… Well, you're saying the real issue is whether or not he had a right to the funds. The contempt is whatever. You say it's really not, you're not really appealing that aspect of the ruling. What you're appealing is whether the ruling was correct when he ordered him to pay back the money. Yes. Appeals from contempt call into question the underlying orders that resulted in contempt finding, and here the underlying reason for the contempt finding was the circuit court's entry of summary judgment on count four. If that granting of that motion and then the contempt find, so it wasn't a find, the circuit court's remedy for the contempt was… Ignoring it, ignoring his order. The circuit court entered a judgment and made a 304A finding, and the circuit court's order at issue regarding what it discussed in contempt finding says this order just addresses the claims in count four, which are the ones regarding William and the conversion claim, and the dollar amount of the judgment that's entered is the exact same amount as was the grant of summary judgment in the prior orders that did not contain 304A language. So really this contempt kind of just collapses back on the underlying entry of summary judgment and whether that was proper or not. Because even if you find the contempt to be proper, the remedy, what the court did was just say you've got to pay. And if that ruling is erroneous, then… Well, that was the ruling you should have appealed originally, and there wouldn't have been any contempt. We could not appeal it at the time it was initially entered because the case was, that order did not resolve all claims against all parties because it was still… You could have asked for 304A language on that. We could have. We ultimately did because that was one of the areas. First, a motion to reconsider was filed, and then there was some other motion practice regarding a settlement that we sought to enforce. And then when the contempt proceedings were initiated by LA, we did ask at that point, say, we want a judgment. I mean, we want a judgment in 304A language so we can take this up. And as the circuit court's order mentions, that request was not objected to, but in fact the circuit court, that's exactly what the circuit court did. So are you going to be happy if we just decide the question of the summary judgment or do you want us to decide the question of the contempt also? Well, I want you to decide them both, but I think the more important issue is the fact that this judgment should be reversed. And he made the judgment, did he not? He didn't show up, but he eventually tendered a check for the amount that was claimed. The amount has been tendered to the plaintiff, yes. And if this appeal, if we prevail, then we'll expect restitution of that amount pending further proceedings. But again, this is a, that, I mean, the case law is clear on restitution and the fact that you may have tendered a judgment versus posting an appeal bond doesn't change the fact that we have the right to litigate this appeal. And again, the contention here is since his name was on the account, he had the right to the money to withdraw money if it was his. But his name was not on the living trust, correct, Mr. Schroeder? No, I can't dispute that, and I don't. I just wanted to clarify that. I don't dispute that. And I think the circuit court's statements regarding a possible claim that William could pursue against Suzanne were based upon the Katz case, which is not factually relevant here because in that case the plaintiff gave money to the defendant or transferred money to the defendant, the defendant just posited that money in a bank, and the plaintiff sued the bank for conversion. And the Supreme Court said he can't do that. But here we have two key facts, which are the same facts I've been hanging my hat on so far, which are that William's name was on this account and he testified unrebutted that the funds in the account, some of them at least, were his. He took out his money. He didn't say he took out her money. He said he withdrew his money. And while Katz did say you can sue the person you transferred the money to, not the bank that's holding the money, that rationale doesn't apply here when, again, William's name was on the account and he testified that what was withdrawn were not trust funds but were his own funds that were in the account anyway. I think we understand your position. We'll give you a chance to respond after we've heard from your opponent. We understand each other. Thank you. Thank you. Counsel? My name is Mitch Feinberg. I represent Leah Weisberger, who is the appellee and plaintiff in the underlying cause of action. If I may, I had an opening, but I wanted to address one of the points that Your Honors were asking, Counsel, and he was saying repeatedly that William Weisberger's name was on the account. That's not accurate. The account was titled in the name of the Leah Weisberger Living Trust. And then right below that, because I was looking at the papers when I was sitting over there, it states William Weisberger, trustee, Leah Weisberger, trustee. And if you're a trustee, the money is not yours. The account was titled in the name of this trust. The trust name was created by Leah Weisberger as the grantor. She was the trustee of this trust, and she was also the sole beneficiary. In the terms of this trust, and by the way, the trust. Was William a trustee by way of this designation or not? By way of the trust itself, no. But that designation of Leah Weisberger, trustee, William Weisberger, trustee, I mean, he's not saying he's a trustee, but what does that designation mean? I have no idea how his name, to be perfectly honest with you, appeared on that bank account. You know, a lot of people, you know, think trust means different things. Well, the fact is that it was there. The fact is it was on the account statement at Harris Bank. What we got from Harris Bank is an affidavit, which was part of the record from one of their offices. The bank was of the opinion that he was entitled to withdraw the money. As a trustee. He was on the account as a trustee. Attached to the opening papers at the bank was the first and last page of that trust, which was supplied pursuant to a subpoena. On those papers, it does not, it attaches the Leah Weisberger Living Trust, so we know we're talking about the same trust. William Weisberger is not a trustee of that trust. His name appeared on that bank account. I don't know how it got there. And the bank allowed him to withdraw the money. Regardless of that fact, when you're a trustee, you can't, you have fiduciary obligations to the beneficiary of the trust. And to say that you can, as a trustee, take the money out of a trust account and put it into your own account and do whatever you want with that, flies in the face of any case that I've ever seen in trust law in general. His testimony wasn't that he was taking it out as a trustee. His testimony was that I put that money in there, and it was my money, and I took it out because it was my money. That's really what his testimony was. And the question is, was that enough to preclude summary judgment? His testimony was all over the place. He was saying anything that would stick when you look at the transcript of his deposition. At one point he said it was my money. At another point he said it was a loan. At another point he said it was rent. Well, I think he said that some of it was his money and some of it was rent. Is that what he said? He was saying so many different things. Well, I mean, that's the way the words came out in the English language. No, I understand that. You didn't join the bank in this case. Pardon me? You didn't join the bank. We did not join the bank in this case. Our complaint was against William Weisberger. But not against the bank. Correct. Does the trial judge get to make credibility determinations at a summary judgment stage? No, Your Honor. Do you think that he did that when he said that William was all over the place in his testimony? Well, he didn't say that. That was me saying that just now. No, but I thought there was something – well, no. So it's not – it wasn't something the trial court ever said. Not that I've seen it in the record. The trial court basically, in its opinion, did a couple of things. One, the trial court said that William Weisberger should bring a separate cause of action if he believes that some of this or all of this money is his and not Leo Weisberger's. That's something he did not do. The trial court also found, after hearing all sorts of – after reviewing the entire record, that there was no genuine issue of material fact because there was absolutely not – I don't want to – there was no evidence or no showing, I should say, of anything to show that this money, in fact, was William Weisberger's. Did he have to sign something when the bank gave him the money? Yes, he – I believe he did sign something. Okay. Is that in the record? A withdrawal ticket. A withdrawal ticket from the trust? From the bank account. Right. That was in the name of the trust. Right. Yes, and that was part of the – actually, it was part of the amended complaint. It was attached to our amended complaint. So I would presume that it is part of – But you didn't join the bank in this action? No. His name was on the account. So we're not saying that the bank did anything wrong. We're saying that William Weisberger was the one who absconded with money that didn't belong to him. The example that I always try to – So you don't even think the bank was negligent? We did not bring any cost of actions against the bank. We didn't bring anything against the bank, Your Honor. The example that I always was thinking of is I have a 401K in my office, and there's a trustee. One of the other attorneys at the bank is a trustee of this account. Can that person just say, hey, the money in Mr. Feinberg's 401K is mine. I'm going to just take it all. I don't know. If the bank that holds the funds gives him the money, don't you think there should be some liability on the part of the bank? If the trustee takes the money out, our actions against Mr. Weisberger, we didn't bring one against the bank. It would fly in any account, any bank account that somebody has. The law with banking is that if you have a deposit – I'm just curious as to why you didn't join the bank. I don't have an answer to that question, Your Honor. We believe that the clear wrong was on behalf of William Weisberger, and that's who we sued. And the bank doesn't have any liability at all to Liam? Again, I don't have an answer to that question. We believe that the wrong was perpetrated by Mr. Weisberger taking the money that's in a trust account and putting it into his own joint account with his wife when he found out who his daughter was dating and the background facts. Your cause of action was for conversion. It was for specific – count four was for specific performance for the conversion of taking the money from the trust account. The other counts remained – they were not – That's not part of this appeal. This was an action for conversion against William. This part of the count four was, yes, precisely, Your Honor. The bank was never a party to any part of this case, though, was it? That's correct. Okay. I'm just curious. No, the bank wasn't. Our action was against Suzanne and William Weisberger. Actually, I think at one point the bank may have been a party, but they were – no, they weren't. I'm sorry. The bank was not a part of this case. Okay. Thank you, Your Honor. Counsel, a final word? Thank you very much. First of all, the circuit court's order, it's in the appendix of my brief. The appendix pages are 839 through about 841. The stamp of the record is hard to make out, but if you look at the appendix, those pages are the pages of the circuit court's judicial ruling and summary judgment where he discusses William's deposition testimony. One of the things he says – or the circuit court that it says on page 839 is, these described reasons, meaning the different – William's being all over the place, so to speak. These described reasons, this is the last three lines of that page, do not appear to be entirely consistent and do not either individually or collectively support the removal action taken by William and his refusal to return the money. Then the next two pages go into a little more discussion about William's deposition testimony. So to answer, I think it was Justice McBride's question, the circuit court did, in fact, discuss William's testimony, and it is our contention that the circuit court, as well as plaintiffs, really, have chosen to disbelieve William's testimony that the money that was removed was his, and you simply cannot do that. That is making a credibility determination, and the fact that William may well have been caught all over the place in his deposition doesn't mean you get to believe what you want and disbelieve what you don't want. That's exactly what you do – that's what a jury does, and that's impeachment. That doesn't mean you reject it. You just say that's a question of fact. You don't try to question the fact on a survey judgment. You decide if they do or do not exist. I think the fact that there's no action against the bank, I can't explain why they did or didn't do it, but I would suggest to you that it's evidence or indicative of the fact that they recognized William's right to access the account. Otherwise, they would have sued the bank. And the fact that there's a signature card or whatever there is at the bank, the point is the pleadings say, and the documents that Mr. Feinberg cited are essentially consistent with that, that William Weisberg's name was on the account as a trustee. Fine. Again, he said he took out his own money, not hers, and that is where this case rises and falls right there. If you accept that proposition, which we contend you must on survey judgment, then what he did was legitimate. If you want to say, no, it wasn't your money, then we're not going to win here, but we submit that that's an issue for trial, not for survey judgment. So for those reasons, we would ask that you reverse the circuit court's ruling in this manner. Thank you. Thank you, counsels. The case will be taken under advisory.